UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――

MARTIN L. MANLEY,

                    Plaintiff,                            Case No. 1:11-cv-151

v.                                              HONORABLE PAUL L. MALONEY

T. WOLVEN,

                    Defendant.

_____/

## OPINION

          This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint[1] indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

---

[1]Plaintiff's complaint is composed of his original filing (docket #1) and a supplement (docket #5). *See* Fed. R. Civ. P. 15(a) (a party may amend once as a matter of course before a responsive pleading is served).

## **Factual Allegations**

Plaintiff presently is incarcerated at the G. Robert Cotton Correctional Facility but complains of events that occurred at the Richard A. Handlon Correctional Facility (MTU).  In his *pro se* complaint, he sues MTU Hearing Officer T. Wolven for violating his due process rights.

Plaintiff's complaint concerns a major misconduct ticket.  On October 28, 2010, Plaintiff was confronted by inmate Jones between Units D and E for allegedly throwing Jones's shower bag away while Plaintiff was cleaning the prison shower.  After a few words, Jones and Plaintiff went their separate ways.  Jones, however, turned around and apparently threatened Plaintiff.  Plaintiff then turned around to talk to Jones but decided to go back to Unit E when he noticed a corrections officer approaching them.  At Unit E, Officer Butler searched Plaintiff and allowed him to go into the prison unit.

Soon thereafter, Officer Chapin gave Plaintiff a major misconduct ticket for threatening behavior and for possessing a weapon.  Apparently, inmate Jones claimed that Plaintiff pulled a knife on him and threw the knife on Unit D's roof.

Officer Rosso provided a witness statement for the major misconduct ticket but Plaintiff claims that Rosso's statement lacks material information.  In his statement, Officer Rosso asserts that he observed two inmates exchanging words as they moved toward a prison unit.  Rosso then called Officer Butler in Unit E about the situation.  Rosso, however, did not state that he observed Plaintiff pull a knife on inmate Jones or throw it on Unit D's roof.  Plaintiff claims that if he had thrown something on prison Unit D's roof, Rosso should have seen it.  Moreover, Plaintiff states that Rosso erroneously claimed that Officer Chapin responded to Rosso's radio call from Unit

E and ordered Plaintiff to go into that unit.  Plaintiff further states that Officer Rosso should have been interviewed by the hearing investigator.

In Officer Chapin's major misconduct report, Chapin states that Officer Rosso alerted him to an incident between Plaintiff and inmate Jones that took place between Units D and E.  When Plaintiff entered Unit E, Plaintiff claims that Officer Chapin was standing at his desk.  Plaintiff alleges that inmate Jones provided the officers with false information.  Officer Chapin then decided to write a major misconduct ticket against Plaintiff.

For the major misconduct hearing, Plaintiff claims that Hearing Officer Wolven did not consider Plaintiff's statement, did not ask Officer Rosso if he saw Plaintiff with an object in his hand or if he saw Plaintiff throw an object on Unit D's roof.  Wolven ultimately found Plaintiff guilty of the major misconduct charges.  Plaintiff alleges that he lost fifteen days of good-time credits for the major misconduct.

Plaintiff seeks declaratory and injunctive relief.

### Discussion

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough

- 3 -

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at

1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks

for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949

(quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'

– that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2));

*see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal*

plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C.

§§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr.*

*Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify

the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff challenges the major misconduct charges against him for threatening

behavior and for possession of a weapon. A prisoner's ability to challenge a prison misconduct

conviction depends on whether the convictions implicated any liberty interest. In the seminal case

in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal

procedural safeguards that prison officials must follow before depriving a prisoner of good-time

credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.  Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest."  But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff alleges that his major misconduct conviction resulted in the loss of fifteen days of good-time credits.  Plaintiff is incorrect.  On February 9, 1990, Plaintiff was convicted in Oakland County Circuit Court of two counts of being a felon in possession of a firearm, MICH. COMP. LAWS § 750.227b, two counts of armed robbery, MICH. COMP. LAWS § 750.529, and two counts of receiving stolen property, MICH. COMP. LAWS § 750.535, for crimes committed on December 17, 1989.[2]  Plaintiff was also convicted in Wayne County Circuit Court on December 11, 2006 of one count of assault with intent to cause great bodily harm less than murder, MICH. COMP. LAWS § 750.84, for a crime committed on August 23, 2006.  As a result, Plaintiff could not have

---

[2]The Court obtained information regarding Plaintiff's convictions from the Michigan Department of Corrections Offender Tracking Information System at http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=207599.

earned good-time credits.[3]  The Sixth Circuit examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits for prisoners convicted for crimes occurring after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence.  Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) ("plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), adopted as judgment of court, Order of Jan. 4, 2011.  Plaintiff was convicted of his crimes after April 1, 1987.  Therefore, the major misconduct ticket affected his disciplinary credits rather than any good-time credits.  In the absence of a demonstrated liberty interest, plaintiff has no due-process claim.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  Plaintiff has not identified any significant deprivation arising from his convictions.  Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical

---

[3]For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

- 6 -

hardship, a due-process claim fails.  *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Plaintiff therefore fails to state a due process claim.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:  September 2, 2011                    ___/s/ Paul L. Maloney_____
                                             Paul L. Maloney
                                             Chief United States District Judge